**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CLAY CHASTAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 16-2087-CM** |
| **ANNE HODGDON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on defendant's Motion to Dismiss (Doc. 6).  Pro se plaintiff Clay Chastain brings this case against defendant Anne Hodgdon, alleging that defendant libeled him by publishing a Facebook post stating that plaintiff sexually assaulted or tried to rape defendant 20 years prior.  Defendant argues that plaintiff's complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the court denies defendant's motion.

**I.    Background**

In the complaint, plaintiff describes himself as a "high profile public figure who has been continually involved in Kansas City politics for 24-years [sic] as a community activist and mayoral candidate."  (Doc. 1-1 at 1.)  He states he resides in Kansas City, Missouri part-time, and that he opposed Mayor Sly James in Kansas City's 2015 mayoral election.  He also "legally challenged" Sly James's "qualifications for having had the city clerk certify his name on the 2015 mayoral primary ballot."  (*Id.* at 4.)

Plaintiff's complaint describes defendant as follows:

Defendant lives in Lenexa, Kansas and is a high profile "political strategist and advocate" (as described on her web site), and is also heavily involved in leading charitable organizations.  Defendant is thus a well known figure in the community and

-1-

knows many people in the business community and in political circles.  Defendant is an ardent supporter of Kansas City, Missouri's Mayor Sly James.

(*Id.* at 1.)

Plaintiff's complaint and accompanying exhibits allege that on May 2, 2015, defendant posted

the following on her Facebook page:

It has been 20 years since I've sat silently by and watched whacko Clay Chastain try to upend KCMO.  And now as Chastain tries, by legal technicality, to deprive Kansas City of its finest Mayor to serve in the 43 years I've lived here, I'll share 'my personal Clay Chastain story.'  It was 1994; my divorce from 'Senator you-know-who' was final and my kids and I had just moved to an O.P. duplex.  My new next-door neighbor invited me to join her for a KC Symphony performance downtown.  Following the concert, we went to the Phoenix to have a drink and get a bite to eat.  As we were eating, a nice looking man approached the table and introduced himself as Clay Chastain.  He said he'd seen me at the Symphony and was 'so taken with me' that he'd followed us to the parking lot and then to the Phoenix.  It had been many years since I'd been single, and while I should have been creeped out by being followed, I was instead flattered.  [duh…..]  As single-people conversation goes, we then each gave a brief overview of who we were, etc., and I found him to be very bright and interesting.  So when he asked, I agreed to meet him the following evening for dinner at a restaurant on the Plaza at that time called Fedora.  Over dinner, I learned much more about him (he loved to do the talking); he said he was an engineer by education and had designed a streetcar plan for KCMO that he planned to present to the City Council.  I love public transit so when he invited me back to his house to see the plans he'd drawn, I bit.  I drove to his midtown house and he did indeed show me his beautifully pencil-drawn plans; pages and pages of them.  He was, up to that point, the consummate gentleman.  So when he went over to play a classical piece on the piano that was in his living room, I sat down on the couch and listened – he was quite an accomplished pianist.  He played for maybe 15 or 20 minutes, and when he finished, he got up from the piano, approached the couch, and leaned over to kiss me.  I slid gingerly away, saying (as I stood up) how much I'd enjoyed the evening, but it was getting late and I had a long drive back to Overland Park.  In a split second, his good looks transformed into rage, and he violently tore my blouse completely open at the buttons.  I kneed him as hard as I could, which gave me the extra couple seconds to run out of his house to my car.  He ran after me, enraged and screaming like a madman, as I backed out of his driveway at high speed – to safety.  I realized of course that I'd made a mistake in going to his house, but he had been such a gentleman, I couldn't fathom I'd be in danger.  The next day, he called my office many times, but I told the receptionist to tell him I did not want to talk to him.  A few days later, he called work again, and this time I took the call and told him to never call again; he said he understood, but just wanted me to hear his apology.  He did not call again.  But I saw him about a year later when I was at the Nelson-Atkins Museum with a girlfriend.  Although I quickly looked the other way, he instantly recognized me, and tried to talk to me.  I declined – so, what did he do?  The creep followed me from

gallery to gallery until I finally stopped dead in my tracks, looked him square in the eye, and told him if he didn't get out of my sight, I would call security; and they would call the police; and I would tell them my whole story.  Thankfully, that made an impression and he disappeared.  Some years later when I read in the media that he'd been accused of calling and trying to date women who had signed his streetcar petitions outside grocery stores, I thought about coming forward, but decided my privacy was more valuable.  Now, my privacy doesn't seem that relevant as the very unstable Clay Chastain 'legally messes with' Kansas City's great Mayor Sly James.[1]

(*Id.* at Ex. 1 (bracketed material in original).)  The post appears to link to a Kansas City Star article titled "Judge will rule soon in Clay Chastain lawsuit" with continued explanation that "Jackson County Circuit Judge Joel Fahnestock said Friday that she will rule next week in Clay Chastain's attempt to get Kansas City Mayor Sly James disqualified from the ballot."  (*Id.* at Ex. 1, Ex. 3.)  Plaintiff alleges that a popular Kansas City blog then wrote about defendant's Facebook post.

Plaintiff states in the petition that he "absolutely denies any of this took place, including attacking [d]efendant in [plaintiff's] home."  (*Id.* at 2.)  The petition alleges that in 1994, plaintiff was not yet involved with public transit nor had he drawn up any plans for streetcars, therefore, he did not have "pages and pages" of beautifully pencil-drawn streetcar plans in 1994.  Plaintiff alleges that he did not design a streetcar system for Kansas City until 2001, seven years after defendant claims the encounter took place.  Plaintiff alleges that he did not design and submit a light rail plan to the city council and voters until 1998.  The complaint also alleges that his 1994 mayoral campaign literature does not include any plans for light rail, streetcars, or any other form of public transit.  The complaint also alleges that plaintiff made no mention of light rail or streetcar plans in plaintiff's Union Station

---

[1] Although plaintiff's complaint does not quote the entire passage, it is contained within Exhibit 1, attached to the complaint, and it is referenced within.  The court quotes the entire passage for context and because the passage is central to plaintiff's claim. *See Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 964–65 (10th Cir. 1994) (citation omitted) (noting that in evaluating a rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

petition of 1995–96, and that plaintiff's autobiography, "Tilting at Windmills," does not mention

plaintiff being interested in public transit or drawing up transit plans until 1998.  Plaintiff states in his

complaint that all of these alleged facts support that defendant's post was false.  Plaintiff states in the

complaint that defendant "concocted this vicious, malicious, and false accusation against [p]laintiff to

intentionally impugn his personal character, harm his credibility as a community activist, and

undermine [plaintiff's] challenge of ousting Mayor Sly James from office." (*Id.* at 3.)  Plaintiff alleges

that defendant knew plaintiff was a threat to Kansas City's current mayor Sly James, who she highly

favors, and that defendant wanted the public to think plaintiff was dangerous and "capable of luring a

woman to his home to sexually assault, if not rape, her." (*Id.* at 5.)  Plaintiff further alleges that

defendant knew this would harm plaintiff's good name, reputation, and his effectiveness as a Kansas

City community activist.  (*Id.* at 6.)

## II.    Legal Standard

The court will grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) only

when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007).  Although the factual allegations need not be detailed, the

claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic

recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*,

534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  The allegations must contain facts sufficient to state a

claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished

from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.

1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  The court construes any reasonable

inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir.

2006).

III.    Discussion

### A.  Whether Plaintiff's Complaint Pleads Actual Malice

To assert a claim for defamation under Kansas law, plaintiff must plead facts that establish: (1) false and defamatory words; (2) communicated to a third person; (3) which injured plaintiff's reputation.  *Dominguez v. Davidson*, 974 P.2d 112, 114 (Kan. 1999); *see also id.* at 117 ("The tort of defamation includes both libel and slander.").  Due to the importance of open and unfettered debate about political issues, including the character and qualifications of political candidates, information about public officials regarding matters of public concern are conditionally privileged.  *See Hein v. Lacy*, 616 P.2d 277, 283 (Kan. 1980).  To overcome a conditional privilege, plaintiff must provide proof of actual malice to recover.  *Id.*  The parties do not dispute that defendant is entitled to a conditional privilege and that plaintiff is required to show actual malice.  Defendant states that plaintiff has not adequately pleaded actual malice and that the complaint therefore fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

To establish actual malice, plaintiff must allege facts showing by clear and convincing evidence that the publication was made "with actual knowledge that it was false or with reckless disregard of whether it was false or not."  *Revell v. Hoffman*, 309 F.3d 1228, 1233 (10th Cir. 2002).  Simply stating that false words were published with malice is not sufficient to allege actual malice.  *See Knudsen v. Kan. Gas & Elec. Co.*, 807 F.2d 71, 81 (Kan. 1991) ("If the plaintiff fails to offer clear and convincing evidence of an extrinsic character to prove actual malice on the part of the defendant in the publication of a slander on a qualifiedly privileged occasion, there is no issue of material fact to be determined, and it is the duty of the trial court to grant the defendant's motion for summary judgment."); *Stice v. Beacon Newspaper Corp.*, 340 F.2d 396, 401 (Kan. 1959).   Therefore, plaintiff must point to extrinsic evidence to show actual malice.  The existence of actual malice is generally a question of fact for the

jury, but when "the facts are not in dispute, it is a question of law for the court." *Davis v. Heldyard*, 113 P.3d 827, 832 (Kan. App. 2005). If the complaint alleges facts that raise a reasonable inference that defendant did not believe what she published and therefore, she knew she was making a false statement, or at least had reckless disregard for the truth, it is not appropriate to dismiss the complaint for failure to plead malice. *See McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014).

Defendant states that plaintiff cannot provide evidence that defendant knew the allegations regarding the sexual assault or attempted rape were false and therefore cannot show actual malice. The court finds defendant's arguments unpersuasive. In her Facebook post, defendant stated that plaintiff sexually assaulted or attempted to rape her, going into great detail in her narrative. Such recounting from defendant's perspective necessarily requires a lucid memory of the event as experienced by defendant herself. Of course, if the event forming the basis of defendant's accusation never occurred, as the court is required to assume at this stage, such a first-person narrative would require that defendant knew that the events were false because she necessarily never experienced them. If defendant knew that the events were false, and nonetheless wrote the detailed narrative describing exactly how plaintiff sexually assaulted or attempted to rape her when it actually never occurred, it is axiomatic that she wrote the narrative with actual malice, or actual knowledge that it was false.[2]

Furthermore, plaintiff pleaded facts that, if true, further support that defendant's allegations were fabricated and that she had a motive to injure his reputation. For example, plaintiff alleges that he had no drawings of streetcars or light rail designs in 1994, and that he did not make such drawings until four years later. Defendant claimed that plaintiff showed her "pages and pages" of hand drawn designs before sexually assaulting or attempting to rape her. Assuming, as the court must at this stage, that the alleged lure to plaintiff's home as defendant described did not actually exist supports that

---

[2] Plaintiff will be able to support his claim with evidence in the form of sworn statements or testimony at summary judgment or trial.

-6-

defendant's accusations were false, which defendant necessarily must have known.[3]  Furthermore,

defendant stated that "as Chastain tries, by legal technicality, to deprive Kansas City of its finest

Mayor to serve in the 43 years I've lived here, I'll share 'my personal Clay Chastain story.'"  (Doc. 1-1

at Ex. 1.)  Defendant also stated that her "privacy doesn't seem that relevant as the very unstable Clay

Chastain 'legally messes with' Kansas City's great Mayor Sly James."  (*Id.*)  These statements may

support an inference that defendant had a motive to harm plaintiff's reputation—bolstering Mayor Sly

James by harming his opponent's reputation.  Plaintiff's complaint properly states a claim of libel of a

public figure.

### B.  Whether the Libel-Proof Plaintiff Doctrine Bars Plaintiff's Claim

Defendant argues that even if plaintiff does state a claim for libel, plaintiff is libel proof.

Defendant argues that plaintiff "already has a well-established reputation of—in his own words—being

a "mad womanizer" who engages in "childlike impulses" without considering "whether it was right or

wrong."  (Doc. 7 at 9.)  Defendant attaches photocopied pages from plaintiff's autobiography as

exhibits to the memorandum in support of her motion to dismiss.

As an initial matter, the court believes considering defendant's exhibits would convert the

motion to dismiss to a motion for summary judgment, which it declines to do.  *See* Fed. R. Civ. P.

12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and

not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

All parties must be given a reasonable opportunity to present all the material that is pertinent to the

motion.").  Although plaintiff's complaint mentions plaintiff's autobiography, plaintiff does not attach

copies of pages from the book as exhibits, nor is the book or passages within it central to plaintiff's

---

[3] Defendant states that one of plaintiff's own exhibits, consisting of political material surrounding defendant's campaign, supports that defendant was involved in transportation plans in 1994.  (Doc. 7 at 4.)  At this time, the court only looks to whether plaintiff's complaint states a claim under Federal Rule of Civil Procedure 12(b)(6), not whether defendant has evidence at this time to rebut plaintiff's claim.

claim.  Plaintiff only references the autobiography to note that nowhere in the book does it state that plaintiff was interested in public transit or drawing up transit plans until 1998, therefore further supporting that defendant's allegations were false.  Therefore, the court declines to consider defendant's extrinsic evidence at this stage, despite plaintiff's mentioning of the evidence in the complaint.  *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210 1215–16 (10th Cir. 2007); *cf. Lamb v. Rizzo*, 391 F.3d 1133, 1137 (10th Cir. 2004) (stating that the district court converted a motion to dismiss for failure to state a claim into motion for summary judgment when it considered defendant's extrinsic evidence in determining libel-proof plaintiff doctrine applied to bar plaintiff's claim). Unsupported by admitted evidence, defendant's claim that plaintiff is libel proof is premature, and the court will not consider it now.  Even if the court did consider the evidence, however, dismissal would be inappropriate.

Courts apply the libel-proof plaintiff doctrine narrowly to instances where allegedly libelous statements cannot realistically cause impairment of reputation, and therefore justify dismissing the claims.  *Lamb*, 391 F.3d at 1139–40.  The Tenth Circuit has predicted that the Kansas Supreme Court would apply the doctrine if presented with the issue.  *See id.* at 1137.  "The libel-proof plaintiff doctrine must be applied with caution, because few plaintiffs will have a reputation which is so awful that they are not entitled to obtain redress."  *Lamb v. Rizzo*, 242 F. Supp. 2d 1032, 1037 (D. Kan. 2003) (citing *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986)).  Defendant states that because plaintiff admits in his autobiography that he was a womanizer and lost the respect of Kansas City, he is libel proof.  The court disagrees.  A "womanizer" is distinct from someone who sexually assaults or attempts to rape women.  Even a "mad womanizer" could experience harm to his reputation from an accusation of sexual assault or attempted rape.  The court denies defendant's motion to dismiss.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss (Doc. 6) is denied.

Dated this 15th day of August, 2016 at Kansas City, Kansas.

_s/ Carlos Murguia_____
**CARLOS MURGUIA**
**United States District Judge**
